**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ROSEMARIE PAPA**, | No. 25-cv-04049 |
| *Plaintiff*, | |
| v. | **OPINION** |
| **IAT INSURANCE GROUP, INC.**, | |
| *Defendant*. | |

**APPEARANCES:**

**Daniel S. Orlow**
**Andrew J. Sarrol**
CONSOLE MATTIACCI LAW, LLC
110 Marter Avenue, Suite 502
Moorestown, NJ 08057

    *On behalf of Plaintiff.*

**Tricia B. O'Reilly**
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102

**Brett A. Carpenter (*Pro Hac Vice*)**
**David L. Woodward *(Pro Hac Vice)***
POYNER SPRUILL LLP
301 Fayetteville Street, Suite 1900
Raleigh, NC 27601

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

    **THIS MATTER** comes before the Court on Defendant IAT Insurance Group, Inc.'s

("Defendant" or "IAT") Motion to Transfer Venue to the Eastern District of North Carolina. (ECF

1

No. 17). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendant's Motion is **GRANTED**.

### I.    BACKGROUND

Plaintiff Rosemarie Papa ("Plaintiff" or "Papa"), a New Jersey resident, was hired by Defendant in April 2018 for a remote position. (Compl., ECF No. 1 at ¶¶ 1, 16; Papa Decl., ECF No. 26-2 at ¶ 4). In her role as Senior Instructional Designer, Plaintiff conducted employee trainings, one-on-one coaching sessions, and individual development plans, primarily via Zoom while working from her home in Cherry Hill, New Jersey. (Pl.'s Opp., ECF No. 26 at 2; Papa Decl., ECF No. 26-2 at ¶¶ 11–13, 15). At the outset of her employment, Plaintiff designed and taught her own classes. (Compl., ECF No. 1 at ¶ 21). Plaintiff's responsibilities also included frequently conducting in-person trainings in North Carolina, Florida, Connecticut, Missouri, and Illinois. (Papa Decl., ECF No. 26-2 at ¶ 14).[1]

Defendant is a North Carolina corporation with a principal place of business and corporate headquarters located in Raleigh, North Carolina. (Compl., ECF No. 1 at ¶ 2; Def.'s Mot., ECF No. 17-1 at 5). Plaintiff's direct supervisor, Jennifer Ratliff ("Ratliff"), IAT's Vice President of Learning and Development, worked from Defendant's Illinois location, and Ratliff reported to Alisa Miller ("Miller"), IAT's Chief Human Resources Officer, who worked from Defendant's headquarters in North Carolina. (Pl.'s Opp., ECF No. 26 at 2; Papa Decl., ECF No. 26-2 at ¶¶ 6–9).

---

[1]  "In 2022 and 2023, approximately 25% of [Plaintiff's] workload consisted of in-person trainings in States outside of New Jersey, including North Carolina, Florida, Connecticut, Missouri, and Illinois." (Papa Decl., ECF No. 26-2 at ¶ 14). Plaintiff traveled to Defendant's home office approximately twelve times in the last two years of employment with Defendant. (Def.'s Mot., ECF No. 17-1 at 11; Miller Decl., ECF No. 17-2 at ¶ 5).

During her employment, Plaintiff alleges Defendant subjected her to discriminatory, retaliatory, and hostile treatment based on her age, disability, requests for and use of medical leave as an accommodation, and use of FMLA benefits. (Compl., ECF No. 1 at ¶ 71). Plaintiff also alleges Defendant retaliated against her because she had made a complaint of age discrimination. (*Id.* at ¶ 36).[2]

On September 27, 2023, Plaintiff participated in a Zoom meeting with Ratliff, where Plaintiff alleges she was "verbally abused." (Compl., ECF No. 1 at ¶ 42; Papa Decl., ECF No. 26-2 at ¶ 16). Plaintiff subsequently met with Miller via Zoom to discuss her concerns. (Compl., ECF No. 1 at ¶ 44; Papa Decl., ECF No. 26-2 at ¶¶ 17–18). On November 30, 2023, Ratliff issued Plaintiff a Coaching Conversation. (Papa Decl., ECF No. 26-2 at ¶ 19). On December 15, 2023, Plaintiff met with Miller and Ratliff via Zoom to discuss Plaintiff's concerns. (Compl., ECF No. 1 at ¶¶ 49–53; Papa Decl., ECF No. 26-2 at ¶ 20). On January 8, 2024, Plaintiff received a Final Written Warning, making her ineligible for various benefits. (Compl., ECF No. 1 at ¶¶ 54–55).[3] Plaintiff later filed a rebuttal. (*Id.* at ¶ 59).

"In late January 2024, Plaintiff's doctor placed her on a leave of absence." (*Id.* at ¶ 60). On May 9, 2024, Defendant notified Plaintiff that she was being replaced and provided "unpaid leave as an ADA accommodation until July 7, 2024," following the exhaustion of her FMLA leave,

---

[2] In December 2022, Plaintiff, who was 62 years old at the time, questioned the requirement that she cross-train facilitators and emailed Ratliff that "you are phasing me out because of my age." (Compl., ECF No. 1 at ¶¶ 17, 22–29). Ratliff subsequently "admonished Plaintiff for putting a complaint about age discrimination in writing." (*Id.* at ¶ 30). Plaintiff suffered from rheumatoid arthritis and neuropathy, which she had communicated to Ratliff. (*Id.* at ¶ 32). In September 2023, Plaintiff underwent bloodwork which showed "abnormalities consistent with multiple myeloma." (*Id.* at ¶ 33). Plaintiff made Ratliff aware of this development and testing related to possible blood cancer. (*Id.* at ¶ 35).

[3] "Defendant's Final Written Warning made Plaintiff ineligible for a raise, bonus, or 401K match for 2023." (Compl., ECF No. 1 at ¶ 55).

3

citing "undue hardship on the team." (*Id.* at ¶¶ 61–62). Plaintiff's doctor thereafter advised she could return to work on July 8, 2024. (*Id.* at ¶ 67). Defendant then offered Plaintiff the position of Business Technical Training Strategist, which Plaintiff declined. (*Id.* at ¶¶ 68–69).

Plaintiff claims she was physically located in New Jersey during "many of the crucial events surrounding her employment," including during Zoom calls with Ratliff and Miller, when Plaintiff was issued a Coaching Conversation and Final Written Warning, when Plaintiff was notified Defendant was replacing her position, and when Plaintiff subsequently reached out to IAT's Human Resources Department. (Pl.'s Opp., ECF No. 26 at 3; Papa Decl., ECF No. 26-2 at ¶¶ 16–25). These events occurred through Zoom, email, or other electronic communications, and there is no evidence that Ratliff, Miller, or any other IAT personnel traveled to New Jersey in connection with them. (Papa Decl., ECF No. 26-2 at ¶¶ 16–25; Miller Decl., ECF No. 17-2 at ¶¶ 8–15). Defendant claims "that the major decisions concerning [Plaintiff's] employment, which are at the heart of her dispute with Defendant, were all made outside of New Jersey and primarily in North Carolina." (Def.'s Reply, ECF No. 29 at 6). While Ratliff was physically located in Illinois, Miller and other IAT human resources personnel were in North Carolina when they made decisions as to Plaintiff's cross-training responsibilities, complaints of mistreatment, medical leave and accommodation, issuance of a Final Written Warning, and positions which may be available following Plaintiff's FMLA leave. (*Id.*; Miller Decl., ECF No. 17-2 at ¶¶ 8–15).

## II.    PROCEDURAL HISTORY

On May 9, 2025, Plaintiff brought this action in the District of New Jersey, asserting claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*; the

4

New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.*; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Compl., ECF No. 1 at 2). Defendant filed an Answer to the Complaint and Affirmative Defenses on July 14, 2025. (ECF No. 4). On August 14, 2025, Defendant filed the Motion to Transfer Venue now before the Court under 28 U.S.C. § 1404(a), arguing that a substantial part of the events related to Plaintiff's allegations occurred in the Eastern District of North Carolina, making it a more convenient forum. (ECF No. 17-1 at 6). Plaintiff then filed a Brief in Opposition, (ECF No. 26), to which Defendant replied, (ECF No. 29).

### III.    LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The purpose of this section is to "prevent the waste of time, energy and money," and "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Yacovella v. Apparel Imports, Inc.*, No. 14-5484, 2015 WL 5098009, at *3 (D.N.J. Aug. 31, 2015) (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993)). It thus "provides for the transfer of a case where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). "The burden of establishing the need to transfer [] rests with the movant." *Halpern v. Centroid Sys., Inc.*, No. 24-7037, 2024 WL 4533370, at *9 (D.N.J. Oct. 21, 2024) (quoting *Jumara*, 55 F.3d at 879). A court may consider affidavits and other evidence outside the pleadings in deciding a motion to transfer under § 1404(a). *E.g., Beaumont v. Vanguard Logistics Servs. (USA), Inc.*, 615 F. Supp. 3d 253, 259 (D.N.J. 2022).

When considering motions to transfer under § 1404(a), courts in the Third Circuit consider a series of non-exhaustive public-interest and private-interest factors. *Jumara*, 55 F.3d at 879–80. The six private-interest factors are:

> [i] plaintiff's forum preference as manifested in the original choice; [ii] the defendant's preference; [iii] whether the claim arose elsewhere; [iv] the convenience of the parties as indicated by their relative physical and financial condition; [v] the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [vi] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted). The six public-interest factors are:

> [(i)] the enforceability of the judgment; [(ii)] practical considerations that could make the trial easy, expeditious, or inexpensive; [(iii)] the relative administrative difficulty in the two fora resulting from court congestion; [(iv)] the local interest in deciding local controversies at home; [(v)] the public policies of the fora; and [(vi)] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted).

## IV.   DISCUSSION

Considering all the relevant factors and interests under § 1404(a), for the reasons that follow, the Court finds that the private and public interest factors as a whole favor transfer.

### A.  The Private-Interest Factors Weigh in Favor of Transfer

First, Plaintiff brought suit in the District of New Jersey, while Defendant is moving for transfer to the Eastern District of North Carolina. A plaintiff's preference "is a paramount consideration," and will "not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Nevertheless, "the plaintiff's choice is not necessarily decisive, particularly where the central facts of the lawsuit did not occur in the plaintiff's chosen forum." *Halpern,* 2024 WL 4533370, at *9 (citation omitted).

The Court next looks to where the claim arose. "[G]enerally, a claim arises in the forum containing the dispute's 'center of gravity,' that is, where the events and transactions central to the dispute occurred." *West v. NNIT, Inc.,* No. 24-38, 2024 WL 3509512, at *8 (D.N.J. July 23, 2024) (citing *Allied Old Eng., Inc. v. Uwajimaya, Inc.*, No. 11-1239, 2012 WL 3564172, at *4 (D.N.J. Aug. 16, 2012)). In employment discrimination cases, the Court considers where the alleged discriminatory decisions were made instead of where the plaintiff felt the effects of the decisions. *See Yacovella*, 2015 WL 5098009, at *8 (determining transfer motion based on where the decision to terminate employee occurred instead of where employee received his termination letter). Thus, in employment cases like this one involving remote employees, the fact that the employee worked in the state is not dispositive if the relevant conduct and decisions took place elsewhere.

For example, in *Wayne v. Fuji Photo Film USA, Inc.*, the court granted transfer to New Jersey where the plaintiff, though generally working remotely from Pennsylvania, was based out of and spent significant time in the employer's New Jersey office, the alleged adverse employment action occurred there, and the decision was made at the employer's headquarters in New York. No. 07-5536, 2008 WL 3832406, at *2, *4 (E.D. Pa. Aug. 14, 2008). Similarly, in *Khartchenko v. American Oncologic Hospital, Inc.*, a court in this District transferred a remote employee's case from New Jersey to the employer's home forum of Pennsylvania, finding that the employee's remote work from New Jersey—which began approximately six years into her employment—and the employee's communications from New Jersey were insufficient to anchor venue when the relevant employment decisions took place in Pennsylvania and the records and witnesses were located there. No. 23-23043, 2025 WL 3140604, at *2–3 (D.N.J. Nov. 10, 2025).

By contrast, in *Halpern*, the court decided against transferring a remote worker case from New Jersey to Michigan, finding that a substantial part of the events occurred in both forums

7

simultaneously. 2024 WL 4533370, at *1, *10. In that case, the plaintiff's employment was explicitly tied to developing the New Jersey market and involved extensive work in the state. *Id.*

Although *Dilmore v. Alion Sci. and Tech. Corp.* suggested that termination may occur where the notice is directed and received, No. 11-72, 2011 WL 1576021, at *5–7 (W.D. Pa. Apr. 21, 2011), more recent cases decided since the proliferation of remote work have instead emphasized the location where the decisions were made, rather than the situs of their effects. *See, e.g., Grieco v. Alacrity Adjusting Sols., LLC,* No. 24-3023, 2025 WL 2712211, at *2 (E.D. Pa. Sept. 23, 2025) (finding that alleged unlawful employment practices did not occur in Pennsylvania merely because employee communicated with potential employer from his Pennsylvania home, when potential employer did not make decisions in Pennsylvania); *see also Wilson v. JPMorgan Chase*, No. 18-13789, 2020 WL 3168539, at *4 (D.N.J. June 15, 2020) (finding "Plaintiff's communications from New Jersey do not form a substantial amount of the alleged wrongful acts," when conduct and employment decisions occurred in New York).

Here, Plaintiff primarily performed remote work from New Jersey and was present in New Jersey during many of the alleged discriminatory actions. (Pl.'s Opp., ECF No. 26 at 3; Papa Decl., ECF No. 26-2 at ¶¶ 16–25). However, the decisions underlying her claims were made by IAT personnel located outside of New Jersey, primarily in North Carolina, making the facts of this case closer to that of *Wayne* or *Khartchenko* than *Halpern*. (Def.'s Reply, ECF No. 29 at 6; Miller Decl., ECF No. 17-2 at ¶¶ 8–15). In addition, Plaintiff's role required travel outside of New Jersey to various states, along with regular visits to Defendant's North Carolina headquarters. (Papa Decl., ECF No. 26-2 at ¶ 14; Def.'s Mot., ECF No. 17-1 at 11; Miller Decl., ECF No. 17-2 at ¶ 5). Unlike in *Halpern*, there is no evidence that Plaintiff's employment was directed toward developing the New Jersey market or otherwise involved extensive work focused on the state. Consistent with

*Wayne* and *Khartchenko*, here the conduct giving rise to Plaintiff's claims centers on where Defendant's employment decisions were made rather than where Plaintiff resided. Accordingly, this factor weighs heavily in favor of transfer.

Turning to the convenience factors, the Court considers parties' physical and financial conditions. *Halpern*, 2024 WL 4533370, at \*9 (citing *Jumara*, 55 F.3d at 879–80). Here, Defendant and many of its key witnesses reside in the Eastern District of North Carolina and Plaintiff resides in New Jersey. (Def.'s Mot., ECF No. 17-1 at 5, 11). While the Court acknowledges Plaintiff's argument that Defendant is in a better position to travel, (Pl.'s Opp., ECF No. 26 at 6–7), Plaintiff has not provided any reason for why she cannot travel, outside of Plaintiff not having North Carolina counsel. (*Id.* at 7; Def.'s Reply, ECF No. 29 at 9–10). Plaintiff does not allege, however, that she would not be able to obtain counsel in North Carolina, either as primary counsel or as local counsel to move for admission of her current counsel *pro hac vice*. Moreover, both parties have agreed to remote depositions, and if trial were to occur, the cost and burden of transporting multiple defense witnesses to New Jersey would considerably outweigh the cost and burden of Plaintiff and, if needed, Plaintiff's current counsel traveling to North Carolina. (Def.'s Reply, ECF No. 29 at 8). These factors weigh slightly toward transfer.

In assessing the location of books and records, Defendant reports that the relevant records are located in North Carolina, but neither party makes any representation that any document could not be made available at trial in either forum. (Pl.'s Opp., ECF No. 26 at 7–8; Def.'s Mot., ECF No. 17-1 at 12; Def.'s Reply, ECF No. 29 at 10). This factor is thus neutral.

Overall, the private interest factors weigh toward transfer.

### B. The Public-Interest Factors Are Neutral or Weigh in Favor of Transfer

The Court now turns to the public-interest factors. First, a judgment rendered in either the District of New Jersey or the Eastern District of North Carolina could be registered in either district. *See SI Power LLC v. Pathway Holdings Mgmt. V, LLC*, No. 15-6101, 2016 WL 7130920, at *9 (D.N.J. Dec. 7, 2016). This factor is neutral.

Ease, expeditiousness, and expense of proceedings, as discussed in greater detail above, all favor transfer. Relative court congestion strongly supports transfer as well. As Defendant underscores, the Eastern District of North Carolina faces significantly less overall congestion than this Court.[4]

Further, this case is not merely a local dispute. Plaintiff brings her claims not only under New Jersey but also federal law, and the dispute concerns employment actions between a New Jersey employee and a North Carolina corporation. (Compl., ECF No. 1 at ¶¶ 1, 2). New Jersey has an interest in protecting its citizens from harassment and retaliation, but so too does North Carolina in adjudicating claims arising from employment decisions made by corporations within its borders. And while this Court may generally have greater familiarity with the NJLAD, there is nothing novel about its provisions; indeed, it essentially mirrors federal law in most respects, *see Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999). The Court has full faith in the judges of the Eastern District of North Carolina to properly apply the NJLAD. Defendant identifies multiple cases in which courts in this District have entrusted the federal courts of other states to adjudicate NJLAD claims. *See West*, 2024 WL 3509512, at *8 (transferring a case

---

[4] *See Table C-1—U.S. District Courts–Civil Federal Judicial Caseload Statistics*, U.S. Cts. (Mar. 31, 2025), https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-1 (logging significantly more pending civil cases in the District of New Jersey than in the Eastern District of North Carolina).

involving NJLAD claims to the Southern District of Georgia); *see also Booth v. Citizens Bank, N.A.,* No. 22-5276, 2023 WL 3916275, at *6 (D.N.J. June 9, 2023) (transferring a case involving NJLAD claims to the District of Rhode Island).

In sum, considering the relevant public and private interest factors, the Court finds this action should be transferred to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a).

## V.    CONCLUSION

For the reasons expressed above, it is ordered that Defendant's Motion to Transfer, (ECF No. 17), is **GRANTED**. The Clerk of the Court shall transfer this action to the U.S. District Court for the Eastern District of North Carolina. An appropriate Order accompanies this Opinion.

_____
**CHRISTINE P. O'HEARN**
**UNITED STATES DISTRICT JUDGE**